McGee v. The Missouri Pacific Railway Company.

McGee v. The Missouri Pacific Railway Company, *Appellant.*

1. **Railroads :** PASSENGERS : FREIGHT TRAINS. Where one is directed by the agents of the railroad, whose duty it is to inform passengers what trains they should enter, to take passage on a freight train, he becomes a passenger notwithstanding, under the rules of the company, which are unknown to him, passengers are not permitted to ride on freight trains.

2. **Freight Trains, Passengers on :** DEGREE OF CARE REQUIRED. Where one is received by a railroad as a passenger on its freight train, the same degree of care is due him that the road owes to its passengers on its regular trains, except that in taking the freight train he accepts and travels on it, acquiescing in the usual incidents and conduct of a freight train managed by competent and prudent men.

3. **Passenger Alighting From Train :** NEGLIGENCE OF CONDUCTOR. In an action by one so received on a freight train, for injuries sustained from falling over an embankment in attempting to alight, it appeared that the defendant did not stop its train at the usual stopping-place where it was safe for passengers to alight, but, on the contrary, at an unusual place where it was unsafe and dangerous, before reaching which stopping-place the station, " Paris," was announced, thereby inviting plaintiff, nothing to the contrary

McGee v. The Missouri Pacific Railway Company.

appearing, to get off when and where the train should stop. *Held,* that these facts, in connection with the further facts that the night was very dark, and that the passengers in the caboose could not for that reason see the danger, and that the conductor, on leaving the caboose with the light, could or might have seen it, made his failure to warn the passengers of the dangerous character of the surroundings gross negligence.

4. ———— : ————. The slowing up of the train as it approached "Paris," the sounding of the whistle, the announcement by the brakeman of the station, stopping the train, the act of the conductor and brakeman in leaving the caboose with the light, and the detachment of the engine to take water, can be construed in no other light than as a direction to the passengers to alight then and there, and plaintiff, in the absence of anything appearing to the contrary, had a right to conclude that it would be safe for him to alight at that place.

5. **Evidence :** Freight trains carrying passengers. It was admissible to introduce evidence to show that it was the custom and usage of defendant's trains to carry passengers.

6. ———— : ————. Nor was it error to receive evidence to show the usual stopping-place of freight trains at the station.

*Appeal from Monroe Circuit Court.*—Hon. Theodore Brace, Judge.

Affirmed.

*Adams & Bowles* and *Thos. J. Portis* for appellant.

(1) The court erred in giving plaintiff's second instruction. It is too general and indefinite. It told the jury that if they found certain acts of negligence on defendant's part, and that plaintiff, while exercising due care on his part, fell down the embankment and was injured, they must find for the plaintiff. This is simply an abstraction. The jury should have been instructed that they must take into consideration all the circumstances of the case, the darkness of the night, the knowledge possessed by plaintiff of the locality, etc., and from them find whether it was prudent or not

to alight from the train at the place and in the manner he did. *Price v. Railroad*, 72 Mo. 418, 419. (2) The defendant had a right to make reasonable regulations as to the mode of transporting the plaintiff as a passenger. *Logan v. Railroad*, 77 Mo. 663; *Johnson v. Railroad*, 46 N. H. 213; *Cheeney v. Railroad*, 11 Met. 121; *Railroad v. Bartram*, 11 Ohio St. 457; *Railroad v. Nozum*, 50 Ind. 141. (3) Passengers must take the responsibility of informing themselves of the every-day incidents of railway traveling. *Mitchell v. Railroad*, 51 Mich. 236; *Railroad v. Hazzard*, 26 Ill. 373. (4) It is the duty of a person about to take passage on a railroad train to inform himself when, where, and how he can go and stop according to the regulations of the railroad company. And if he makes a mistake, not induced by the railroad company, against which ordinary care on his part in this respect would have protected him, he has no remedy against the company for the consequences. *Beaucamp v. Railroad*, 56 Texas, 239; *Railroad v. Applewhite*, 52 Ind. 540; *Railroad v. Nozum*, 50 Ind. 141; *Cheeny v. Railroad*, 11 Met. 121; *Railroad v. Proctor*, 1 Allen, 267; *Johnson v. Railroad*, 46 N. H. 213; *Railroad v. Bartram*, 11 Ohio St. 457; *Dietrich v. Railroad*, 71 Pa. St. 436; *Railroad v. Randolph*, 53 Ill. 510. (5) By his ticket, a passenger acquires only the right to be carried according to the custom of the road. He cannot insist on being carried out of the customary course of the road. *Railroad v. Randolph*, 53 Ill. 511. (6) No negligence can be imputed to the defendant. The evidence shows that the conductor was forbidden to carry passengers on the train in question, it being a through freight train, and the fact that plaintiff was carried, or that he had frequently ridden on freight trains, had no tendency to prove a usage, on the part of defendant, in conflict with this regulation. The conductor had no power to repeal or alter it, and no right to violate it, and the instances

McGee v. The Missouri Pacific Railway Company.

testified to by the plaintiff's witnesses are not shown to have come to the knowledge of the governing officers of defendant. The reception of plaintiff by the conductor as a passenger (if indeed he was so received), was not within the scope of his authority, and was in disobedience of positive instructions in that regard. *Johnson v. Railroad*, 46 N. H. 213–221; *Smith v. Railroad*, 44 N. H. 332; *Elkins v. Railroad*, 23 N. H. 287 [3 Foster]; *Murch v. Railroad*, 29 N. H. 99 [9 Foster]; *Beebe v. Ayers*, 28 Barb. 283; *Tibbetts v. Moore*, 19 N. H. 369; *Martin v. Great Falls Co.*, 9 N. H. 51. (7) The act of the conductor, in receiving the plaintiff's ticket, did not bind him to stop his train at a station, or at any place convenient for the plaintiff to alight, or at any place other than the exigencies of the service in which the train was engaged demanded. *Railroad v. Hatton*, 60 Ind. 12; *Railroad v. Randolph*, 53 Ill. 513. (8) Defendant's instruction, in the nature of a demurrer to the evidence, should have been given. Plaintiff's evidence shows such contributory negligence as precludes his recovery. *Nelson v. Railroad*, 68 Mo. 593; *Kelly v. Railroad*, 70 Mo. 604; *Henry v. Railroad*, 76 Mo. 293; *Lennox v. Railroad*, 76 Mo. 86; *Powell v. Railroad*, 76 Mo. 80; *Murch v. Railroad*, 29 N. H. 9 [9 Foster]; *Mackey v. Railroad*, 27 Barb. 528; *Railroad v. Goddard*, 25 Ind. 185–199; *Railroad v. Leahey*, 10 Mich. 198; *Railroad v. Steinberg*, 17 Mich. 127; *Railroad v. Miller*, 25 Mich. 279; *Railroad v. Coleman*, 28 Mich. 452; *Railroad v. Campeau*, 35 Mich. 471; *Snoboda v. Ward*, 40 Mich. 424; *Downey v. Hendrick*, 46 Mich. 501; *Hassenger v. Railroad*, 48 Mich. 209; *Cockle v. Railroad*, L. R. 5 C. P. and cases cited; *Eckerd v. Railroad*, 30 N. W. Rep. 615.

*J. H. Rodes* and *A. H. Waller* for respondent.

(1) It conclusively appears from the evidence that

defendant's ticket agent at Moberly and its conductor, Malone, were both duly authorized agents of the company with reference to its passenger traffic, and defendant is bound by what they said and did. 2 Wood's Railway Law, sec. 355, p. 1413; Hutch. on Carriers, sec. 269; Wharton on Agency, sec. 162; *Marshall v. Railroad*, 78 Mo. 616; *Railroad v. Fix*, 88 Ind. 381; *Railroad v. Pierce*, 47 Mich. 277; *Railroad v. Gilbert*, 22 A. & E. R. R. Cases, 406; *Wilton v. Railroad*, 107 Mass. 108; *Prince v. Railroad*, 21 A. & E. R. R. Cases, 152. (2) It is wholly immaterial what the rules of the company were with respect to the train in question if plaintiff was directed to take passage thereon by the authorized agents of the company. *Logan v. Railroad*, 77 Mo. 668; *Hicks v. Railroad*, 68 Mo. 338; *Creed v. Railroad*, 86 Pa. St. 139; *Gradin v. Railroad*, 30 Minn. 217; *Derby v. Railroad*, 14 Howard, 486. (3) Although the defendant's servants may have been prohibited by the rules of the company from carrying passengers on this train, yet if plaintiff had no notice, or information of said rule, and was directed to said train by defendant's said ticket agent, and was received as a passenger by said conductor and paid his fare, and defendant at the time was regularly carrying passengers on some of its freight trains, and passengers were habitually carried on all of its freight trains, then plaintiff was rightfully on said train as a passenger notwithstanding the rule. 2 Wood's Railway Law, 1044-45; *Dunn v. Railroad*, 58 Me. 187; *Lucas v. Railroad*, 33 Wis. 43; *Irvine v. Railroad*, 23 A. & E. Ry. Cases 518; *Railroad v. Hoest*, 93 U. S. 296. (4) Defendant having received the plaintiff as a passenger on its said freight train owed him the same degree of care which it owes to passengers on regular passenger trains. Thompson on Car. of Pass., sec. 20, p. 234; *Railroad v. Hoest*, 93 U. S. 296; *Railroad v. Dickerson*, 59 Ind. 317; *Railroad v. Mahling*, 30 Ill. 9; *Railroad v. Kessler*, 18

Kansas, 523 ; *Railroad v. Beaver*, 41 Ind. 493 ; *Hazard v. Railroad*, 1 Biss. 503 ; *Edgerton v. Railroad*, 39 N. Y. 227. (5) Defendant was guilty of gross negligence toward plaintiff in announcing Paris station and bringing the train to a stop at an unusual and unsafe place to alight, and by other acts inducing him to believe that he was required to alight, then and there, and in failing to warn plaintiff of the dangerous character of the place and in failing to furnish him a light by which to leave the train. *Cockle v. Railroad*, L. R. 7 C. P. 321 ; *Cartwright v. Railroad*, 52 Mich. 606 ; *Railroad v. Buck's Adm'r*, 96 Ind. 347 ; *Railroad v. Whitfield*, 44 Miss. 466 ; *Weller v. Railroad*, L. R. 9 C. P. 126 ; *Railroad v. Hendricks*, 41 Ind. 48. (6) Before a demurrer to the evidence could be sustained by the court, it must have affirmatively appeared that the contributory negligence of the plaintiff and not the negligence of the defendant was the proximate cause of the injury. *Buesching v. St. Louis Gas Light Co.*, 73 Mo. 229 ; *Kistner, Ex'r, v. City of Indianapolis et al.*, 8 Am. and Eng. Corp. Cases, 420. (7) When the station has been announced, and the train stopped, passengers may rightfully assume that they may safely alight from the car, unless notified to the contrary ; and if no light is furnished them they are not chargeable with negligence for leaving it in the darkness. Beach on Contributory Neg. 173 ; *Leslie v. Railroad*, 88 Mo. 51 ; *Railroad v. Buck's Adm'r*, 96 Ind. 347 ; *Cartright v. Railroad*, 52 Mich. 609 ; *Cockle v. Railroad*, L. R. 7 C. P. 321 ; *Weller v. Railroad*, L. R. 9 C. P. 126 ; *Railroad v. Farrell*, 31 Ind. 408 ; *Railroad v. Van Horn*, 38 N. J. Law, 133 ; *Millman v. Railroad*, 66 N. Y. 642 ; *Dice v. W. T. & L. Co.*, 8 Oregon, 60 ; *McKimble v. Railroad*, 139 Mass. 542. (8) It is declared as a matter of law by the courts that a passenger is not guilty of contributory negligence in trusting that the carrier will discharge its duty toward him, and will not expose him to unnecessary danger; and if the carrier's

inducements lead him into danger the carrier is estopped, in a certain sense, from making the defence that the acts so induced are negligent. Beach on Contributory Neg., sec. 23, p. 71.; *Moberly v. Railroad*, 17 Mo. App. 542; *Brassell v. Railroad*, 84 N. Y. 241; *Railroad v. Ogler*, 35 Pa. St. 71; *Fowler v. Railroad*, 18 W. Va. 581; *Kellogg v. Railroad*, 26 Wis. 223. (9) Plaintiff's second instruction is accurately based on the facts, and correctly and sufficiently declares the law and was liberal to defendant. *Hyatt v. Railroad*, 19 Mo. App. 293; *Stafford v. Railroad*, 22 Mo. App. 343; *Railroad v. Clark*, 74 Ala. 443. (10) The court did not err in admitting evidence of the custom of defendant to carry passengers on all its freight trains; knowledge on the part of the governing officers of the corporation being implied from the notoriety of the custom. Lawson on Usages and Customs, sec. 21, pp. 40, 41, 42; Wood on Master and Servant, sec. 401, p. 791. (11) The court did not err in the admission of testimony showing the stopping-place of north-bound freight trains at Paris. *Tibby v. Railroad*, 82 Mo. 299; *Brassell v. Railroad*, 84 N. Y. 241; *Wood v. Railroad*, 49 Mich. 372. (12) The award of damages is not excessive. In actions for permanent injury to the person, the courts will not disturb the award of damages where the evidence tends to support the verdict. A verdict will not be set aside as excessive, unless the amount is so disproportionate to the injury as to evince prejudice, or passion, on the part of the jury. 2 Wood's Ry. Law, 1226, note 2, 1238; *Deppe v. Railroad*, 38 Iowa, 592; *Drain v. Railroad*, 86 Mo. 583; *Waldhier v. Railroad*, 87 Mo. 48; *Price v. Railroad*, 71 Mo. 66; *Harrold v. Railroad*, 24 Hun [N. Y.] 184.

NORTON, C. J.—This is an action to recover damages for injuries sustained by plaintiff, a passenger on one of defendant's freight trains, in consequence of de-

fendant's negligence, and the case is before us on defendant's appeal from a judgment obtained by plaintiff on the trial, and we are asked to reverse the judgment because of alleged error in the circuit court, in refusing to give an instruction for defendant in the nature of a demurrer to the evidence, and in giving improper instructions for plaintiff.

The evidence on the part of the plaintiff tends to establish the following facts, viz: That plaintiff purchased from defendant's ticket agent, at Paris, Missouri, a round-trip ticket for himself and wife, from Paris to Moberly, and return; that, having gone to Moberly, and wishing to return to Paris, he was directed by defendant's ticket agent, at Moberly, with the acquiescence of the conductor, to take passage on a freight train standing on defendant's track, some distance from the depot; that the caboose, having been pointed out, plaintiff and his wife, a Miss Carrer, and one Mason, entered the caboose attached to said train; that the conductor of said train took up the tickets from plaintiff, for himself and wife, and collected from him one fare in cash for Miss Carrer; that it was dark when the train left Moberly, and very dark when the train arrived at Paris, about 9 : 30 o'clock at night, so much so, according to the evidence of one of the witnesses, that you could not see your hand before you; that the train, on approaching Paris, was slowed up, and the whistle sounded; that the conductor and hind brakeman came down from the lookout on the caboose, and the brakeman, in the hearing of all the passengers, announced Paris, and with the conductor, went out of the caboose, taking the light with them, the train, in the meantime, coming to a stop, and the conductor and brakeman proceeding down the track to the depot, when the conductor registered his train, during which time, and after the stop, the engine was detached from the train for the purpose of taking water at the tank.

The evidence tended further to show that the train, instead of being stopped at what is known as Fox crossing, the usual stopping-place for north-bound freight trains, and which was known to plaintiff to be a safe place for alighting from trains, was stopped some distance before reaching said crossing, with the caboose standing on the east end of a high trestle, put in a deep ravine, where heavy timbers had been dropped in against piling, making a square wall thirty or forty feet long, and nine feet high, the bank being steep; from the rail to the edge of the embankment was about five feet, and the steps of the caboose extended about two feet from the rail, so that a person, in stepping down from the caboose, would step within a foot of the edge of the embankment.

The evidence tends further to show that, after the train stopped, and after the action of the conductor and brakeman, in leaving the caboose and going down to the depot, and the detachment of the engine from the train, that plaintiff and the other passengers alighted from the caboose, and that plaintiff having alighted, in assisting one of the lady passengers to alight, fell over the embankment, receiving the injury for which he sues, consisting of a broken leg. The evidence, while it also tended to show that plaintiff had long been a resident of Paris, was acquainted and knew of the embankment by having passed over and seen it previous to the accident, did not tend to show that he knew the caboose had stopped there when he got off. The evidence also tended to show that the freight train on which plaintiff took passage was an extra which, under the rules of the company, was not permitted to carry passengers, but did not tend to show that plaintiff had knowledge thereof.

The above facts, which the evidence tended to establish, makes out a case which it was proper to submit to the jury. Notwithstanding, under the rules of the com-

pany (which were unknown to plaintiff), passengers were not permitted to ride on the train in question, yet, plaintiff, when directed by the agents of defendant, whose duty it was to direct passengers what trains they would enter, to take passage on this train, became a passenger. *Marshall v. Railroad*, 78 Mo. 660; *Logan v. Railroad*, 77 Mo. 668; *Hicks v. Railroad*, 68 Mo. 329; 2 Wood's Railway Law, sec. 355, p. 1413. At pages 1044 and 1045, of the author last cited, it is said : " A person, who, without knowing it is against the rules of the company for passengers to ride on a freight train, if he pays his fare, and is received as a passenger by the conductor, he may be entitled to the rights of a passenger ; and such, also, may be the case, where, notwithstanding the rules, it is shown that passengers have been habitually carried upon such trains ; but where a person, knowing the rules, gets upon a freight train, even with the assent of the conductor, and pays no fare, he cannot be regarded as a passenger."

In the case before us there was abundant evidence showing that passengers were habitually carried upon defendant's freight trains. Plaintiff having been received by defendant as a passenger on its freight train, the same degree of care was due to him that defendant owed to passengers on its regular trains, except that plaintiff, in taking the freight train, accepted and traveled on it, acquiescing in the usual incidents and conduct of a freight train, managed by prudent and competent men. *Railroad v. Horst*, 93 U. S. 291.

In section 20, page 234, Thompson on Carriers of Passengers, it is said : " The company is held to as strict an accountability for the negligence of its employes in the management of a train with a caboose attached in which passengers are seated, as the law imposes in the transportation of passengers on trains especially provided for that purpose. It cannot, however, be expected that a company will provide its freight trains

with all the conveniences and safe-guards against danger, which may properly be demanded in the construction and operation of cars designed solely for the transportation of passengers. * * * The ordinary rule that the company must provide safe and convenient means of getting on and off trains, obviously, has but slight application to the case of a passenger traveling on a freight train."

The defendant did not stop its train at the usual stopping-place where it was safe for passengers to alight, but, on the contrary, at an unusual place where it was unsafe and dangerous, before reaching which the station, "Paris," was announced, thereby inviting plaintiff, nothing to the contrary appearing, to get off when and where it stopped. These facts, in connection with the further facts that the night was very dark and that passengers in the caboose could not for that reason see the danger, and that the conductor, on leaving the caboose with the light, could or might have seen it, made his failure to warn and inform the passengers of the dangerous character of the surroundings gross negligence.

But it is argued that plaintiff was also negligent in leaving the caboose under the circumstances, and that the demurrer to the evidence ought to have been sustained for that reason. We are of a different opinion. The slowing up of the train as it approached Paris, the sounding of the whistle, the announcement by the brakeman of the station, stopping the train, the act of the conductor and brakeman leaving the caboose with the light, the detachment of the engine to take water, can be construed in no other light than as a direction to the passengers to alight then and there, and plaintiff, in the absence of anything appearing to the contrary, had a right to conclude that it would be safe for him to alight at that place. *Leslie v. Railroad,* 88 Mo. 50; *Railroad v. Buck's Adm'r,* 96 Ind. 347; Beach on Con.

Neg., p. 173, and sec. 23, p. 71, where it is said: "When the defendant, by his own negligent or wrongful acts or omissions, throws plaintiff off his guard, or when the plaintiff acts in a given instance upon a reasonable supposition of safety induced by the defendant, when there is, in reality, danger to which plaintiff is exposing himself in a way, and to an extent which, but for the defendant's inducement, might be imputed to the plaintiff as negligence, sufficient to prevent a recovery, such conduct on the part of plaintiff, so induced, will not constitute contributory negligence in law, and the defendant will not be heard to say that the plaintiff's conduct under such circumstances is negligent for the purpose of a defence to the action. * * * If the plaintiff exercises ordinary care and prudence under the circumstances in relying upon defendant's inducement, or in obeying defendant's orders and directions, he may have his action."

It is next insisted that the second instruction given for plaintiff is erroneous, because it is too general, in telling the jury that if plaintiff exercised "due care," etc., and did not specifically set out all the circumstances tending to show contributory negligence. The instruction is as follows:

"2. If the jury find from the evidence that plaintiff was a passenger on defendant's said train; and that it was dark when said train arrived at Paris; and that defendant's agents and servants stopped said train so that the caboose stood upon a high embankment, the side of which was perpendicular; and that said place was a dangerous place for passengers to alight from said train; and that said place was not the usual and ordinary stopping-place for freight trains at said station; and that the brakeman of said train announced the station; and that plaintiff, believing that said train was at its usual stopping-place and that no other opportunity would be offered him to alight from said train

at said station; and further find that defendant's said agents and servants neglected to warn plaintiff of the dangerous character of the place, or that he must not attempt to alight at said place; and that they carried away their lanterns and failed to furnish plaintiff any light by which to alight from said train, they will find defendant guilty of negligence towards plaintiff; and if the jury so find the defendant guilty of negligence towards plaintiff, and that, as the direct and immediate consequence of such negligence on defendant's part, plaintiff, while exercising due care on his part, alighted from said train, and fell down the embankment at said dangerous place, and sustained the injuries complained of in plaintiff's petition, they will find a verdict for plaintiff."

We have already shown that it was not negligent in plaintiff in alighting from the train at the time he did, and inasmuch as there is nothing in the case before us to show that plaintiff in leaving the caboose was not exercising due care, the error complained of, if it may be so called, was immaterial, especially so in view of the evidence which would have justified the court in adding after the words due care, "and there being no evidence tending to show that plaintiff was not exercising due care."

It is also insisted that the court erred in admitting evidence to show that it was the custom and usage for defendant's freight trains to carry passengers. The fact of such custom was testified to by a number of witnesses, and that it was notorious, and the reception of the evidence, was warranted by the following authorities: Wood on Master & Servant, sec. 401, p. 776; Lawson on Custom, 41, 42.

Nor was error committed in the reception of evidence to prove the usual stopping-place of freight trains at the station in Paris. *Tibby v. Railroad*, 82 Mo. 299;

*Brassel v. Railroad,* 84 N. Y. 241; *Wood v. Railroad,* 49 Mich. 370.

The cause having been fairly tried, the judgment is affirmed, with the concurrence of the other judges.